# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: Integrated Proteins, LLC,

    Debtor

Case No. 26-20713-11
Jointly Administered – Lead Case

_____

In re: Nutrihub, LLC,

    Debtor

Case No. 26-20714-11

_____

In re: HFO Logistics, LLC

    Debtor.

Case No. 26-20715-11

_____

## U.S. Trustee's Objection to Debtor's Application to Employ Chief Restructuring Officer

_____

Under 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014, the U.S. Trustee objects to the debtor's application to employ David R. Payne and Marshall & Stevens as Chief Restructuring Officer[1] because Payne does not qualify under § 327(e), the debtors have not demonstrated that Payne is disinterested, it is not sufficiently clear that Payne would report to anyone, there are problematic compensation elements, and other issues.

_____

[1] ECF #18.

## Background

The debtors operate together with several affiliated non-debtor entities to manufacture and distribute pet food.

On May 1, Integrated Proteins, its affiliate HFO Logistics, and their parent company Nutrihub, as well as three other entities—Purdy Holdings Group LLC, Hubbard Ingredients LLC, and Innovity Ventures LLC—all hired David R. Payne as Chief Restructuring Officer. Payne, who isn't an attorney, leads the advisory and litigation support firm Marshall & Stevens.

The agreement is between those six companies and Payne. It specifically provides that Payne may use Marshall & Stevens personnel to assist him in the performance of his duties, but the firm "shall have no service agreement with the Companies" and "shall not be considered a professional as defined by Bankruptcy Code Section 327."

The six companies and Payne agreed that Payne will be a contract employee elected to serve as an officer of each of the six companies. He "will report directly" to and "will work at the direction of" each company's members, who are not identified. Notwithstanding this limitation, Payne is given multiple areas of authority and "shall have

2

the exclusive authority" for each of the companies in several areas, including financing, selling assets, payments to creditors, and payments to insiders and executives. It appears that Payne has final authority on a day-to-day basis or effectively total operational control.

The agreement says Payne will be assigned additional tasks if bankruptcy is filed, although those additional tasks are not identified because the referenced Addendum A is not attached to the agreement. The six companies can only terminate Payne with 90 days' notice and Payne's compensation continues during those 90 days.

In the agreement, the six companies agree to pay Payne a base amount of $15,000 every two weeks, plus "standard rates" for anything over 30 hours and for all Marshall & Stevens staff. And they will reimburse expenses with no cap. Nothing in the agreement addresses how the compensation and expenses will be allocated among the six entities. In addition, the six companies agree to pay Payne 3.5% of any capital funding source he originates, or 1.5% of any capital funding source if originated by someone else. Any success fee is to be paid at closing.

3

To guarantee payment of this compensation, the agreement calls for Payne to receive an initial deposit of $100,000. The agreement doesn't address how that expense will be allocated among the six companies.

In the agreement, the parties agree that Payne will provide professional liability insurance of $1 million but also agree that Payne is released from any liability other than gross negligence or willful misconduct. Any dispute between Payne and companies is subject to mandatory, binding, and confidential arbitration. The agreement is signed by Payne and by Joseph Hubbard for the six companies.

On May 6, five days after hiring Payne as CRO, Integrated Proteins, its affiliate HFO Logistics, and their parent company Nutrihub all filed their petitions in chapter 11, and now the cases are jointly administered. Payne signed each of the petitions. Purdy Holdings Group, Hubbard Ingredients, and Innovity didn't file bankruptcy at the same time.

The next day, the Integrated Proteins debtors filed an application to employ Marshall & Stevens as CRO under § 327(e). As Executive Managing Director at Marshall & Stevens, Payne would be "Head Chief Restructuring Officer" for the debtors. In the affidavit attached to the

4

application, Payne says that the debtors don't "currently owe any unpaid fees to" Marshall & Stevens, although he doesn't say if any fees were paid to him or his accounting firm before the bankruptcy filing.

The debtors have not yet filed schedules.

On May 27, Innovity and Hubbard Ingredients each filed for chapter 11 protection. As of the filing of this objection, Purdy Holdings Group hasn't filed.

**Argument**

**I.  Payne does not qualify for employment under § 327(e).**

Under 11 U.S.C. §§ 327(e), if certain conditions are met, a debtor in possession may employ an attorney for a specified special purpose, other than to represent the debtor in possession in conducting the case.

Here, Payne is not an attorney, so he doesn't qualify for employment under § 327(e). The debtors must be intending § 327(a). This Court has previously rejected an attempt to retain a CRO outside § 327.[2]

---

[2] *See In re Lodging Enters., LLC*, No. 24-40423, 2024 Bankr. LEXIS 2167 (Bankr. D. Kan. Sept. 17, 2024).

5

## II. It is not clear that Payne is disinterested.

Assuming the debtors meant § 327(a), there are still issues. To be retained for the bankruptcy estate, a professional must be disinterested and must not hold or represent an interest adverse to the estate.[3] The party seeking employment bears the burden of establishing that it satisfies both prongs.[4]

Under the Bankruptcy Code, the term "disinterested person" excludes anyone who is or was in the last two years a director, officer, or employee of the debtor.[5] It also excludes an insider.[6] When the debtor is a corporation, as in this case, insider includes any director, officer, or person in control of the debtor.[7] Thus, a current or former officer, director, employee, or person in control of the debtor is not disinterested under the Code. Insider also includes an affiliate or an insider of an affiliate.[8]

---

[3] 11 U.S.C. § 327(a).

[4] *Interwest Bus. Equip. v. United States Trustee* (*In re Interwest Bus. Equip.*), 23 F.3d 311, 318 (10th Cir. 1994).

[5] 11 U.S.C. § 101(14)(A).

[6] *Id.* at § 101(14)(B).

[7] *Id.* at § 101(31)(B).

[8] *Id.* at § 101(31)(E).

Here, before bankruptcy the debtors specifically made Payne "a contract employee elected to serve as an officer of each Company." Because that was within two years of the filing, Payne is not a disinterested person under § 101(14)(B). Payne is also an insider both because at the time of bankruptcy filing he was the Chief Restructuring Officer and because he appears to be the person in control of the debtor. He even signed the petitions for each debtor.

In addition, in his position in three other affiliates, Payne is an insider of those affiliates. Thus, he is not a disinterested person under § 101(14)(A). This Court has previously allowed the retention of a former officer as CRO, but that case involved a former officer who was not also serving as a CRO of five other companies and had years of knowledge about that debtor's business.[9] Here, Payne is a current officer by agreement, is serving as the CRO of five other related businesses, and does not have years of experience with the debtors.

Although Integrated Proteins' application to employ does not address any of this, if it is trying to skirt these defects by hiring

---

[9] *See In re Lodging Enters., LLC*, No. 24-40423, 2024 Bankr. LEXIS 2167 (Bankr. D. Kan. Sept. 17, 2024).

Marshall & Stevens rather than Payne directly, it does not alter the analysis. As a preliminary matter, the statute's definition of insider "includes" certain specified people, which indicates that the list is instructive but not exhaustive.[10] And the focus for analysis is the actual situation, not titles. In addition, as the Executive Managing Director of Marshall & Stevens, Payne is in control. Further, indirect disqualification is common. In *Prado Verde*, the bankruptcy court rejected an application to employ a real estate broker because the broker's 50% owner was the stepdaughter of the debtor's principal.[11] "Her insider status disqualifies her and the corporation of which she is President and 50% shareholder."[12]

And as a practical matter, the agreement in this case indicates it is Payne himself who is acting as CRO. And it specifically says the agreement is not with Marshall & Stevens.

Nor is Payne saved by § 1107(b), which says that a person is not disqualified solely because he was employed by or represented the

---

[10] *See U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 390 (2018) (noting § 102(3)'s rules of construction that includes and including are not limiting).

[11] *In re Prado Verde Ranch, Inc.*, 250 B.R. 127 (Bankr. D.N.M. 2000).

[12] *Id.*

debtor before bankruptcy. That statute is usually narrowly construed to situations where there are no other reasons to disqualify.[13] Here, Payne is an officer, is the person in control of the debtor, and is an insider in several different ways.

In addition, it appears Payne has an interest materially adverse to the interest of the estate and creditors. He is eligible for a substantial bonus payment if he obtains refinancing of any loan for the debtors, even if that doesn't benefit the estate. In *Lodging*, this Court found no materially adverse interest, but there the agreement had already been revised to eliminate the success fee.[14]

Finally, in his affidavit Payne says he is not owed compensation, but he began work on May 1 and signed each of the bankruptcy petitions, so he must have incurred fees. Nothing in his affidavit addresses how much he was paid or if he is waiving any fees.

Ultimately, Payne fails § 101(14)(A), (B), and (C), so the application to employ should be denied.

---

[13] *See, e.g., In re Essential Therapeutics, Inc.*, 295 B.R. 203, 207-08 (Bankr. D. Del. 2003), but *contra* in *In re Lodging Enters., LLC*, No. 24-40423, 2024 Bankr. LEXIS 2167 (Bankr. D. Kan. Sept. 17, 2024).

[14] *In re Lodging Enters., LLC*, No. 24-40423, 2024 Bankr. LEXIS 2167 (Bankr. D. Kan. Sept. 17, 2024)

### III. It appears Payne would have no one to report to.

Rather than hiring a CRO to report to its management, it appears the debtors are seeking to outsource their debtor-in-possession duties to a third party. While the agreement says that Payne would take directions from each company's members, they are not sufficiently identified. And because Payne would have areas of "exclusive" authority, as well as a paid 90-day notice requirement for termination, it is not readily apparent that there is any real oversight or Board to oversee Payne.

If the debtor-in-possession is not going to operate the company during bankruptcy, the only other person authorized to do so by the Bankruptcy Code would be a chapter 11 trustee. No specific Code section provides for the appointment of a CRO, and the Bankruptcy Code does not afford a CRO any independent powers—the only types of chapter 11 fiduciaries provided under the Code are debtors-in-possession, trustees, and examiners.[15] A CRO does not displace the debtor-in-possession and is not the representative of the debtor under

---

[15] *See* 11 U.S.C. § 1104; *see also In re Adelphia Commc'ns Corp.,* 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) (holding that court could not appoint independent fiduciary because there is no basis in Bankruptcy Code for such appointment).

the Bankruptcy Code and therefore cannot be given the authority to make decisions on behalf of the debtor.[16] For example, the Bankruptcy Code does not define whether a CRO is able to hire professionals, to pursue chapter 5 causes of action, or to carry out the functions normally reserved to debtors-in-possession or chapter 11 trustees. By contrast, a debtor-in-possession and a chapter 11 trustee have clearly defined powers under the Bankruptcy Code to hire professionals, to pursue causes of action, and to file a plan.

## IV. The compensation structure is problematic.

The debtors seek to pay a flat fee of $15,000 every two weeks for up to 30 hours, plus other compensation. For the flat fee amount, nothing in the application addresses what kind of hourly rate this might equate to—it's $500/hour with a 30-hour minimum—or how the proposed fee is reasonable.

The debtors also seek to pay "standard rates" for everything beyond 30 hours and for all Marshall & Stevens staff, but do not say what the standard rates are. And nothing in the employment application

---

[16] *See* 11 U.S.C. § 1107.

11

addresses how the fees will be allocated among the three debtors, let alone the three other entities.

In addition, the debtors have not demonstrated that a success fee is reasonable under these circumstances. And if it is reasonable, it should be subject to review by the Court under § 330. Similarly, if the Court permits the retention of Payne, he should be paid only after approval of a proper § 330 fee application. Under 11 U.S.C. § 330(a), any professional retained by the estate under § 327 needs to request approval of the Court for fees and can be paid only after such approval is obtained. That is not the compensation structure sought in the application to employ.

It is Integrated Proteins' burden to show the reasonableness of the compensation arrangement, and it has not carried its burden.

## V. The employment application has other issues as well.

In addition to the above, there are several other problems with the Integrated Proteins debtors' application to employ Payne or Marshall & Stevens as Chief Restructuring Officer:

- The debtors and Payne request a deposit of $100,000 be paid to Payne. The application doesn't address which entity or entities would pay for it, nor why it is needed. Nor where it would be held and under

12

what conditions. And the cash collateral motion includes a listing of deposits that says $115,000 has already been paid to Payne.[17]

- The agreement includes an arbitration provision for any dispute arising out of the agreement. But matters of employment and compensation of professionals are core proceedings governed by the Bankruptcy Code and within the exclusive jurisdiction of this Court.[18] If Payne is retained, the arbitration provision should be eliminated.

## Conclusion

The burden of proving the facts necessary to support the employment application falls on the debtor. The debtors have not met that burden for the proposed CRO Payne. Therefore, the application to employ should be denied.

Respectfully submitted,

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

By: s/Richard A. Kear
Richard A. Kear, #20724
Trial Attorney
301 N. Main St., Suite 1150
Wichita, KS 67202

---

[17] ECF #31-3 at 1.

[18] *See In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 624 (Bankr. E.D. Cal. 2012) (Bankruptcy courts have "original and exclusive jurisdiction" over professional employment, compensation, and disclosure under 28 U.S.C. §§ 1334(e)(2) and 157(b)(1)); *see also In re Eland*, No. 12-22394, 2014 Bankr. LEXIS 736 (Bankr. D. Kan. Feb. 24, 2014) (finding a fee application is a core proceeding).

13

(202) 573-6945
Richard.Kear@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 28, 2026, a true and correct copy of this **Objection** was electronically filed with the Court using the CM/ECF system, which sends notification to all parties of interest participating in this case through the CM/ECF system.

By: s/Richard A. Kear

14