| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED PROTEINS, LLC, *et al.*, | ) | Case No. 26-20713-11 (DLS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO APPLICATION TO EMPLOY MARSHALL &
STEVENS AND DAVID R. PAYNE AS CHIEF RESTRUCTURING OFFICER**

**[Relates to Docket No. 18]**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") submits this objection (this "Objection") with respect to the *Application by Debtors for the Authority to Employ Marshall & Stevens and David R. Payne as Chief Restructuring Officer* [Docket No. 18] (the "Application")[2]. In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Committee does not oppose, in principle, the Debtors' efforts to retain David R. Payne ("Payne") and Marshall & Stevens ("M&S"). However, the Application raises significant legal and structural concerns that must be addressed before any such retention can be approved.

2.      The Committee joins in the objection filed by the United States Trustee, to extent consistent with points set forth below, and incorporates the arguments contained therein. As the U.S.

---

[1]     The Debtors' principal place of business is 1480 NW Vivion Road, Kansas City, Missouri 64118. The Debtors in these Chapter 11 cases are: Integrated Proteins LLC; NutriHub LLC; and HFO Logistics LLC.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application

Trustee correctly observes, the Application suffers from several foundational defects, including the failure to establish a proper statutory basis for retention, significant concerns regarding compensation, and ambiguity regarding Payne's reporting structure and authority. Such concerns are only exacerbated by the recent chapter 11 filings of two additional Debtor entities that apparently are also seeking to retain Payne as CRO. If different law firms were needed for the two more recent Debtor entities, it is unclear how Payne could serve as CRO for all entities given the likely conflicts that could arise among the opaque web of interrelated entities.

3. In addition, the Committee is concerned that the proposed engagement improperly extends to non-Debtor entities, lacks clarity as to the CRO's role and authority, and proposes a compensation structure that is overbroad and insufficiently tied to value provided to the estates. As currently structured, the Application fails to provide the transparency and safeguards required under the Bankruptcy Code and risks authorizing an arrangement that is not adequately protective of estate interests.

## BACKGROUND

### I. The Chapter 11 Cases

4. On May 6, 2026 (the "Petition Date"), the Debtors each filed their voluntary petitions with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108(a) of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

5. On May 26, 2026, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Kansas (the "U.S. Trustee") appointed a five-member Committee: (a) Farmers Union Industries, LLC, (b) Badger Ingredients, Inc., (c) Commodity Services, Inc., (d)

2

Schroeder Country Products, and (e) Seneca Trading, LLC. *See Notice of Appointment of Official Unsecured Creditors* [Docket No. 126].

6. On May 28, 2026, the Committee selected McDermott Will & Schulte LLP to serve as counsel to the Committee in connection with the Chapter 11 Cases, subject to Court approval. Thereafter, the Committee selected Province, LLC to serve as the Committee's financial advisor in the Chapter 11 Cases.

## II. The Application

7. On May 7, 2026, the Debtors filed the Application.

8. The Debtors seek to employ M&S and Payne as Chief Restructuring Officer pursuant to section 327(e) of the Bankruptcy Code. The scope of the proposed engagement is expansive and includes oversight of operations, development of financial projections, evaluation of intercompany transactions, and the sourcing of capital and restructuring alternatives.

9. As reflected in the underlying agreement, Payne was engaged prepetition by the Debtors together with multiple affiliated non-Debtor entities, and serves as an officer across those entities with significant operational authority, including authority over financing, asset sales, and payments. The agreement provides that Payne will act at the direction of each company's members, but also grants him broad, and in some instances exclusive, authority over key aspects of each entity's operations.

10. The compensation structure is comprised of several components. First, the Debtors will pay a base fee of $15,000 per bi-weekly (semi-monthly) period for CRO services. Second, M&S personnel will charge additional fees at standard hourly rates for any staff time exceeding 30 hours per bi-weekly period; however, the Application does not specify whether this 30-hour threshold applies on a per-person basis or in the aggregate across all M&S personnel. Third, the Debtors are

3

required to fund an upfront $100,000 deposit, which will be applied to fees and expenses and refunded to the extent unused at the conclusion of the engagement. Fourth, the Debtors will reimburse all reasonable and documented out-of-pocket expenses incurred in connection with the engagement. Finally, the engagement provides for success-based compensation tied to capital transactions: M&S will receive a fee equal to 3.5% of any new capital, lending, or bridge financing introduced by the CRO, and 1.5% of any such financing obtained from sources not originated by the CRO (including those sourced by the Debtors or their representatives).

## **OBJECTION**

11. ***First***, the Application should be denied because it fails to comply with the requirements of the Bankruptcy Code and does not provide the clarity necessary for approval. As an initial matter, the Debtors seek to retain Payne under section 327(e), which is limited to the retention of attorneys for specified special purposes. Payne is not an attorney, and the scope of his proposed duties far exceeds the limited role contemplated by that provision. The Application therefore fails to establish a valid statutory basis for the requested relief.

12. Courts routinely approve the retention of CROs under sections 105(a) and 363(b) of the Bankruptcy Code where the debtor demonstrates that the engagement is appropriate, the professional is disinterested, and the terms of employment are transparent and subject to meaningful Court oversight. For example, in *In re Payless Holdings LLC,* Case No. 19-40883 (Bankr. E.D. Mo. Mar. 19, 2019 ) [Docket No. 605], the court approved the retention of Ankura Consulting Group, LLC to provide CRO services and designated an individual as CRO pursuant to sections 105(a) and 363(b), based on a clearly defined engagement, delineation between the firm and the individual CRO, and structured reporting and compensation terms approved by the Court. *See also In re Inspired Healthcare Capital Holdings, LLC,* Case No. 26-90004 (Bankr. N.D. Tex. Apr. 3, 2026) [Docket No.

4

432] (approving CRO retention under §§ 105(a) and 363(b) upon findings of disinterestedness and subject to ongoing disclosure obligations, structured compensation review, and limitations on conflicts); *In re Genesis Healthcare, Inc.,* Case No. 25-80185 (Bankr. N.D. Tex. Sept. 5, 2025*)* [Docket No. 800] (authorizing retention of restructuring advisor and designation of CRO pursuant to §§ 105(a) and 363(b), with detailed reporting and oversight requirements); *In re Ebix, Inc.,* Case No. 23-80004 (Bankr. N.D. Tex. Feb. 4, 2024) [Docket No. 289] (authorizing retention of AP Services, LLC and designation of CRO pursuant to §§ 105(a) and 363(b), including requirements for detailed reporting, expense scrutiny, and limitations on compensation and scope of services).

13. In each of the above cases, the debtor sought approval under the appropriate statutory authority and proposed engagement terms that were transparent, properly circumscribed, and subject to ongoing Court supervision, including detailed reporting and limitations on conflicts, compensation, and scope of services. By contrast, the Application here attempts to proceed under an inapplicable provision, fails to clearly identify whether the Debtors seek to retain Payne individually, M&S as a firm, or both, and does not provide a coherent framework for the Court to evaluate the proposed engagement. This departure from well-established practice further confirms that the Application, as currently structured, should not be approved.

14. ***Second***, the Application lacks clarity regarding Payne's current role and relationship to the Debtors and affiliated entities, including the scope of his authority and how his services are allocated among Debtor and non-Debtor entities. While the Committee does not object to Payne's retention based solely on his prepetition engagement, the Application does not provide sufficient transparency regarding his existing roles and responsibilities to permit appropriate Court oversight of the proposed retention.

15. ***Third***, the Application is further problematic because it repeatedly refers to services

provided to the "Companies" collectively, a term that encompasses both Debtor and non-Debtor entities. The underlying agreement confirms that Payne's engagement spans multiple affiliated entities, including those that are not debtors in these cases. However, the Application does not explain how services will be allocated among these entities, how compensation will be borne, or how conflicts of interest will be managed. Absent clear limitations, the proposed retention risks the use of estate resources to benefit non-Debtor affiliates, which is impermissible. At a minimum, the Debtors and Payne should explain how he will navigate the complex intra-company disputes among the integrated web of Debtors and non-Debtor affiliates.

16. *Fourth*, the proposed compensation structure raises additional concerns. In particular, the success fee provisions entitle Payne to compensation not only for capital transactions he originates, but also for funding obtained through other sources. This structure is inappropriate because it allows Payne to receive compensation without a direct nexus to value provided to the estates. Moreover, the Application does not establish that such fees are necessary or reasonable, nor does it provide a mechanism for meaningful Court oversight under section 330. These concerns are compounded by the lack of clarity regarding hourly rates, the absence of defined "standard rates" for additional services, and the failure to explain how compensation will be allocated among the Debtors and affiliated entities. In any event, such "success" fees should not be pre-approved now, but should require further notice and an opportunity to object once the quantum and purported rationale are established.

17. *Fifth*, the Application also fails to clearly define Payne's authority and reporting structure. Although the agreement states that Payne will act at the direction of the Debtors' members, those governing bodies are not clearly identified, and the agreement appears to grant Payne broad, and in some instances exclusive, authority over key aspects of the Debtors' operations.

18.     Finally, the Application does not adequately distinguish between the roles of Payne and M&S.  While both appear to be involved in providing services, the agreement suggests that Payne is the principal actor, and that M&S personnel merely support his efforts. Nevertheless, the Application seeks to retain both without clearly delineating their respective responsibilities or explaining how fees will be allocated.  This ambiguity raises the risk of duplication and unnecessary expense

19.     For these reasons, the Application cannot be approved in its current form.

## **RESERVATION OF RIGHTS**

20.     Committee further reserves the right to supplement or amend this Objection and to raise additional arguments in response to any reply or at any hearing.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) sustain this Objection and deny the Application; or (ii) in the alternative, condition any approval on modifications that address the concerns raised herein, including but not limited to establishing a proper statutory basis for retention, limiting the scope of services to Debtor entities, revising the compensation structure, and clarifying Payne's authority and reporting obligations.  The Committee further requests such other and further relief as the Court deems just and proper

Dated: Wichita, Kansas
June 4, 2026

**MARTIN PRINGLE ATTORNEYS AT LAW**

*/s/ Samantha M. H. Woods*
W. Rick Griffin (Bar No. 21628)
Samantha M. H. Woods (Bar No. 25929)
645 E. Douglas, Suite 100
Wichita, KS 67202
Telephone:     (316) 265-9311
Facsimile:     (316) 265-2955
E-mail:          wrgriffin@martinpringle.com
                    smwoods@martinpringle.com

**MCDERMOTT WILL & SCHULTE LLP**

*/s/ Kristin K. Going*
Kristin K. Going (*pro hac vice* forthcoming)
Darren Azman (*pro hac vice* forthcoming)
Nathaniel Allard (*pro hac vice* forthcoming)
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone:     (212) 547-5400
Facsimile:     (212) 547-5444
E-mail:          kgoing@mcdermottlaw.com
                    dazman@mcdermottlaw.com
                    nallard@mcdermottlaw.com
                    jclee@mcdermottlaw.com

*Proposed Counsel to the Official*
*Committee of Unsecured Creditors*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a true and correct copy of the foregoing was served by the

Court's CM/ECF system on all counsel of record registered in this case through CM/ECF.

*/s/  Samantha M. H. Woods*
Samantha M. H. Woods