**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In re:<br>INTEGRATED PROTEINS, LLC<br><br>Debtor. | Case No. 26-20713-11<br>Chapter 11<br>(Lead Case; Jointly Administered) |
| INTEGRATED PROTEINS, LLC,<br><br>Plaintiff,<br>v.<br><br>BLUEROCK CAPITAL, LLC,<br><br>Defendant. | Adv. No. 26-__________ |

**COMPLAINT**

Plaintiff Integrated Proteins, LLC ("IP" or "Plaintiff"), debtor and debtor in possession, states the following against Defendant BlueRock Capital, LLC ("BlueRock"):

## I. NATURE OF THE ACTION

1. This is one of a series of adversary proceedings brought against merchant cash advance funders whose agreements are sales in form but loans in substance.

2. BlueRock advanced funds under an agreement dated April 23, 2026 (the "Agreement"), attached as Exhibit A.

3. The Agreement, which BlueRock styles "Purchase and Sale of Future Receivables," calls itself a purchase of future receivables and disclaims any loan.

4. The Agreement's operation shows that it is a loan:

a. the remittances are fixed;

b. the reconciliation provision is illusory;

c. BlueRock holds a security interest in all assets; and

d. on default the entire uncollected balance accelerates and the remittance percentage becomes one hundred percent.

5. The merchant (i.e. borrower) named on the Agreement is Hubbard Ingredients, LLC (“HI”), not IP.

6. BlueRock advanced the purchase price to HI.

7. The Agreement’s authorization for direct deposit and direct payments names HI as the Merchant and designates an account in HI’s name at Nodaway Valley Bank.

8. No account of IP is designated on it.[1]

9. IP is named once in the Agreement, in a list of businesses in an addendum that purports to add IP and eight other businesses as parties.

10. No consideration for the receivables BlueRock claims to have purchased moved from BlueRock to IP, and BlueRock never made a single payment to IP in any amount.

11. Whatever funds reached IP came from Hubbard Ingredients, LLC in its own right and not from BlueRock.

12. IP never made a single payment directly to BlueRock.

13. Because the transaction is a loan, IP owns its accounts receivable.

14. BlueRock holds at most a security interest in IP’s assets, and not ownership of them.

[1] Ex. A (Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits)).

15. Any security interest held by BlueRock in IP's assets is unperfected as to IP because BlueRock filed no financing statement naming IP in Wyoming, and is avoidable on that ground under 11 U.S.C. § 544(a).

16. Separately, any security interest held by BlueRock in IP's assets is wholly unsecured by value under 11 U.S.C. § 506(a), because it sits behind $32,405,514.34 of senior perfected debt against receivables having a net value of $8,302,020.73 on the Petition Date.

17. The obligations IP incurred without consideration are invalid as failing to support a contract, and thus any claim of BlueRock should be disallowed.

18. IP seeks judgment quieting title to its receivables, a declaration that the Agreement is a loan, avoidance of BlueRock's unperfected lien, disallowance of BlueRock's claim, avoidance of IP's obligations to BlueRock, injunctive relief restraining BlueRock from demanding, collecting, applying, or otherwise exerting control over any receivables generated by IP and from notifying or directing any account debtor of IP, pending final judgment, and termination and recovery of the adequate-protection payments IP made or is making on account of BlueRock's asserted interest.

## II. JURISDICTION AND VENUE

19. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of Kansas.

20. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), (M), and (O).

21. To the extent any claim is non-core, IP consents to the entry of final orders and judgment by this Court under 28 U.S.C. § 157(c)(2) and Fed. R. Bankr. P. 7008 and 7012.

22. Venue is proper under 28 U.S.C. §§ 1408 and 1409 because this proceeding arises in and relates to IP's case pending in this District.

23. As debtor in possession, IP exercises the rights and powers of a trustee under 11 U.S.C. § 1107(a), including the avoiding powers conferred by 11 U.S.C. §§ 544, 548, and 549.

24. The statutory and rule predicates for relief include 11 U.S.C. §§ 105, 361, 362, 363, 502, 506, 544, 548, 549, 550, 551, and 552, and Fed. R. Bankr. P. 7001.

## III. PARTIES

25. IP is a Wyoming limited liability company, registered as a foreign limited liability company in Kansas and Missouri, and the debtor in possession in Case No. 26-20713-11, filed May 6, 2026 (the "Petition Date").

26. IP is located in Wyoming for purposes of Article 9 of the Uniform Commercial Code.[2] Its location for perfection under U.C.C. §§ 9-301 and 9-307(e) is Wyoming.

27. BlueRock Capital, LLC is a New York limited liability company that represents in the Agreement that it maintains a place of business in Connecticut and New York. It may be served under Fed. R. Bankr. P. 7004(b)(3) by mailing a copy of the summons and complaint to its registered agent in New York, attention of an officer, managing agent, or general agent, at The LLC, Suite 3, 1212 Avenue N, Brooklyn, New York 11230. Pursuant to authority from its counsel, Alan Hocheiser, it may also be served with process at 1135 Kane Concourse, 6th Floor, Bay Harbor Islands, Florida 33154.

[2] Ex. B (IP Wyoming Articles of Organization, filed May 13, 2019, original ID 2019-000855960).

## IV. FACTUAL BACKGROUND

### A. IP and Its Senior Secured Debt

28. On the Petition Date, First Interstate Bank ("FIB") held a first priority perfected secured claim against IP, secured by the receivables of IP, in the amount of $22,253,300.10.[3]

29. On the Petition Date, Kompass Kapital Funding, LLC ("Kompass") held a second priority perfected claim of $9,538,269.24.[4]

30. On the Petition Date, WebBank, through Libertas Funding, LLC ("WebBank"), held a third priority perfected secured claim against IP in the amount of $613,945.00.[5]

31. Each of FIB, Kompass, and WebBank perfected its security interest in the receivables of IP by a financing statement filed in Wyoming, IP's state of organization, before the date of the Agreement.

32. Each of those perfected interests is senior to any interest in IP's receivables asserted by BlueRock or by any other merchant cash advance funder.[6]

33. As of the Petition Date, the accounts receivable of IP had a net value of $8,302,020.73 and the accounts receivable of HFO Logistics, LLC had a net value of $77,404.26, an aggregate of $8,379,424.99.[7]

---

[3] Claim No. 138 (First Interstate Bank), $22,253,300.10.
[4] Claim No. 127 (Kompass Kapital Funding, LLC), $9,538,269.24, stated as $9,500,000.00 of principal, $26,490.86 of interest and $11,778.38 of attorneys' fees.
[5] Claim No. 77 (WebBank c/o Libertas Funding, LLC), $613,945.00, which asserts the claim as secured but states no secured amount.
[6] Ex. E (List of Claims Against Cash Collateral, stating a total of $48,734,490.11 of claims against cash collateral, of which $16,328,975.77 is claimed by merchant cash advance parties).
[7] Ex. D (accounts receivable aging summaries as of the Petition Date).

34. Because the senior perfected debt exceeds $32 million against receivables worth less than $10 million, every merchant cash advance position, including BlueRock's, is wholly unsecured by value.

**B. The BlueRock Agreement**

35. On April 23, 2026, BlueRock and HI entered into the Agreement, a true and correct copy of which is attached as Exhibit A.

36. BlueRock drafted the Agreement.

37. The Agreement identifies the Merchant as "HUBBARD INGREDIENTS LLC," gives the d/b/a as "HUBBARD INGREDIENTS", the state of organization as Missouri, and the address as 11203 County Rd. 375, Saint Joseph, Missouri 64505.

38. Joseph Daniel Hubbard is named as contact for the Merchant and signed the Agreement for the Merchant and as the sole Guarantor.

39. The Agreement styles itself a purchase and disclaims any borrowing. It provides:

> "Merchant hereby sells, assigns and transfers to BRC (making BRC the absolute owner) in consideration of the 'Purchase Price' specified above, the Purchased Percentage of all of Merchant's Future Receipts [...] until the 'Purchased Amount' has been delivered by or on behalf of Merchant to BRC. [...] Merchant is selling a portion of a future revenue stream to BRC at a discount, not borrowing money from BRC, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BRC."[8]

40. In spite of the foregoing provision, the Agreement's operation, set out below, is that of a loan.

[8] Ex. A at 1 ("Purchase and Sale of Future Receivables").

41. The Agreement recites a purchase price of $1,000,000 in exchange for a purchased amount of $1,350,000, a premium of $350,000 over the amount advanced.[9]

42. This premium amounts to approximately thirty-five percent over a term of roughly 140 days, an effective annualized cost of approximately 91 percent at the lowest (using a simple, non-compounding formula).

43. The Agreement requires remittances of $67,500 per week, stated as forty percent of receipts, which implies a fixed term of approximately twenty weeks.[10]

44. The Agreement states the Purchased Percent as forty percent.[11]

45. The Authorization Agreement for Direct Deposit and Direct Payments delivered with the Agreement states the percentage as twenty percent. It authorizes BlueRock to debit "[u]p to the amount of $67,500.00 (Or) Percentage of each Banking Deposit: 20 %."[12]

46. The two documents state two different percentages and the same fixed dollar remittance of $67,500.00. The fixed dollar amount is the only term on which they agree.

47. The Agreement states the Payment Frequency as "WEEKLY" and provides on the same page that BlueRock "will debit the Remittance each business day."[13]

48. The Authorization Agreement leaves blank the line stating the days on which BlueRock is authorized to debit the account.[14]

49. Reconciliation is available only once per calendar month, only on the merchant's written request accompanied by bank and processing statements, and only if no event of default or

---

[9] Ex. A at 1.
[10] Ex. A at 1.
[11] Ex. A at 1.
[12] Ex. A at 9 (Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits)).
[13] Ex. A at 1.
[14] Ex. A at 9.

breach has occurred: "As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount. [...] All requests hereunder must be in writing to Reconciliations20@gmail.com."[15]

50. BlueRock retained the right to demand additional documentation and the Agreement states that it has no obligation to reconcile if the documentation is not provided.[16]

51. Nothing in the Agreement permits the merchant to interfere with BlueRock's debits while a reconciliation request is pending.[17]

52. On any event of default the remittance percentage becomes one hundred percent and the entire balance accelerates. The Agreement provides that "upon the occurrence of an Event of Default [...] the Purchased Percentage shall equal 100%,"[18] and that on default "[t]he full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) [...] become due and payable in full immediately."[19]

53. The Agreement makes an Event of Default of, among other events, the merchant's failure to give BlueRock twenty-four hours' advance notice that its account will lack sufficient funds for a remittance, the merchant's use of multiple depository accounts without BlueRock's written consent, any change to or closing of the depositing account without that consent, the merchant's entry into any other financing agreement, the return by the merchant's bank of any

---

[15] Ex. A ¶ 1.4.
[16] Ex. A ¶ 1.4.
[17] Ex. A ¶¶ 1.4, 1.5.
[18] Ex. A at 1.
[19] Ex. A ¶ 1.13, Protection 1.

code other than insufficient funds, and the merchant's violation of any term or covenant of the Agreement.[20]

54. The Agreement package includes a separate one-page document captioned "BlueRock Capital LLC Stacking Addendum," which recites that it is an addendum to the April 23, 2026 contract between BlueRock as buyer and HI as seller.[21]

55. The Stacking Addendum provides that under no circumstances is the merchant allowed to receive factor receivables until BlueRock is fully paid, and that a breach of the stacking prohibition is an Event of Default on which BlueRock reserves the right to commence collections immediately.[22]

56. The Stacking Addendum does not name IP.

57. The Stacking Addendum twice recites that the merchant agrees to "the Stacking Prohibited provision of the Agreement."

58. The Agreement contains no provision captioned "Stacking Prohibited."

59. The Stacking Addendum reserves BlueRock's right to commence collections "pursuant to Section of the Agreement," and identifies no section.[23]

60. Appendix A to the Agreement, captioned "THE FEE STRUCTURE," states fourteen charges, lettered A through N: an Underwriting Fee of a "[m]inimum of $1,000.00 or up to 15% of the purchase price"; an Origination Fee of a "[m]inimum of $1,000.00 or up to 28% of the purchase price"; an NSF Fee of $35.00 for each returned payment, each of which "is a default"; a "Rejected ACH / Blocked ACH / Default Fee" of $5,000.00; a Bank Change Fee of $50.00; an

[20] Ex. A ¶ 3.1(a), (d), (h), (i), (j), (k), (l).
[21] Ex. A at 10 (Stacking Addendum).
[22] Ex. A at 10.
[23] Ex. A at 10.

Inaccessible Login Fee of $50.00 per day; a Wire Fee of $50.00; an attorney's fee provision; an Unauthorized Account Fee of $5,000.00; a Default Fee of "$5,000.00 or up to 10% of the funded amount"; a Stacking Fee providing that if the merchant "takes any further financing from any other finance /factoring company a minimum fee of $10,000.00 or 10% of the purchased amount will be added to the Merchants current balance"; a Risk Assessment Fee of $249.00; a UCC Fee of $195.00; and a Management Fee of $499.00 per month, "at a minimum of three months."[24]

61. The Agreement also recites that the merchant's bankruptcy, cessation of business, slowdown in business, or delay in collecting its receivables does not in itself constitute a breach.[25]

62. The Agreement also permits BlueRock to separately enforce the guaranty and its security interest.[26]

63. The Agreement grants BlueRock a blanket security interest. It provides:

> "This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BRC a security interest in and lien upon all of their present and future: (a) accounts [...], chattel paper, documents, equipment, general intangibles, instruments, and inventory [...], (b) all proceeds [...] (collectively, the 'Collateral')."[27]

64. The Agreement further grants BlueRock all funds in the merchant's accounts "regardless of the source of such funds," and, upon any shortfall, recourse to "all of Merchant's assets of any kind whatsoever."[28]

65. BlueRock obtained a performance guaranty from Joseph Daniel Hubbard only.

---

[24] Ex. A, Appendix A.
[25] Ex. A at 1.
[26] Ex. A ¶ 1.13, Protections 2–3.
[27] Ex. A, Security Agreement.
[28] Ex. A, Security Agreement.

66. The Agreement recites that the guarantor is "only guaranteeing their performance [...] and [is] not guaranteeing the payment of the Purchased Amount."[29]

67. The guaranty's operative terms provide otherwise, making the guarantor "jointly and severally liable for all amounts owed to BRC in the Event of Default," subject only to a carve-back if the merchant "ceases operations/goes out of business."

68. The Agreement is governed by Connecticut law.[30]

69. BlueRock advanced funds pursuant to the Agreement. No part of those funds was credited to any account of IP.

70. The authorization agreement for direct deposit and direct payments delivered with the Agreement designates one account and only one: an account at Nodaway Valley Bank in the name of Hubbard Ingredients, LLC, routing 101201863, account ending 0582.[31]

71. No account of IP is designated anywhere in the Agreement or in any document delivered with it.

72. No debits in favor of BlueRock in any amount, on any date, and no credits from BlueRock in any amount, on any date, were ever made on any account held by IP.

73. IP is named only in the "Addendum to the Future Receivables Sale and Purchase Agreement and Guaranty" (the "Addendum").

74. The Addendum recites that the parties "desire to amend and restate the Agreement by adding the name(s) of the Additional Seller as the parties to the Agreement, as if the Additional Seller were the signatories to the Agreement," jointly and severally.

---

[29] Ex. A at 1, 6.
[30] Ex. A ¶ 4.5.
[31] Ex. A (Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits)).

75. The Addendum lists nine businesses, and designates "Seller # 1" as the "Original Seller" and "Seller # 2, Seller # 3 and Seller # 4" as the "Additional Seller."

76. Seller # 1 is ResourceOne Global LLC. HI, the Merchant named on the first page of the Agreement, is listed as Seller # 2. IP is listed as Seller # 3.[32]

77. The Addendum recites that the obligations of the Original Seller "are further guaranteed by the Original Guarantor pursuant to the Personal Guaranty of Performance set forth as Exhibit A to the Agreement."[33]

78. No document in the Agreement is captioned "Personal Guaranty of Performance." The only document in the Agreement captioned "EXHIBIT A" is the Addendum itself.[34]

79. IP did not sign the Agreement.

80. The Addendum adds nine businesses as parties to the Agreement on one signature. Its signature block is captioned "Merchant Name," gives the title "OWNER," and is signed by Joseph Daniel Hubbard. The Addendum provides no signature line for IP or for any other business it lists.[35]

81. Nothing in the Agreement identifies Joseph Daniel Hubbard as a member, manager, or officer of IP.

82. The Agreement contains no resolution, written consent, operating agreement, or certificate of authority of IP.

83. The Agreement does not identify specifically any receivables of IP that are being purchased.

---

[32] Ex. A at 13 (Addendum, "Additional Sellers").
[33] Ex. A at 14 (Addendum, recitals).
[34] Ex. A at 13 (Addendum, caption); cf. Ex. A at 6-7 (Security Agreement and Guaranty); Ex. A ¶ 3.2.
[35] Ex. A at 14 (Addendum, signature block).

84. The Agreement does not specifically identify any receivables at all.

85. BlueRock never examined any specific receivables of IP prior to entering into the Agreement.

86. The only risk to BlueRock at any point in time was the failure of the Merchant, the Seller, and the Guarantor to generate sufficient income to repay the "purchased amount" or to maintain sufficient collateral to do so, the same risk that a lender undertakes.

87. BlueRock filed a single UCC-1 financing statement, with the Missouri Secretary of State on May 6, 2026 under file number 20260506000596548.[36]

88. That financing statement names Hubbard Ingredients, LLC, J&R Gutters, LLC, Hubbard Cattle Co., LLC, RJJC Concerns, LLC, RJJC Trucking, LLC, and Joseph Daniel Hubbard as debtors.

89. That financing statement names C T Corporation System, as representative, as the secured party of record, and does not name BlueRock.

90. The name Integrated Proteins does not appear anywhere in that financing statement, in any form.

91. BlueRock filed no financing statement in Wyoming, IP's state of organization.

92. BlueRock has not filed a proof of claim in IP's case.

---

[36] Ex. C (MO UCC-1).

### C. The Cash-Collateral Order and Adequate Protection

93. On July 1, 2026, the Court entered the second interim cash-collateral order in the IP case, and on August 5, 2026 the Court entered a third interim order extending its terms (together, the "Interim Order").[37]

94. BlueRock appeared as an Other Lienholder and receives a direct weekly adequate-protection payment of $3,334.50.

95. IP is making those adequate protection payments on account of BlueRock's asserted interest in IP's receivables.

96. The Interim Order makes no determination of the nature, extent, validity, value, or ownership of any asserted interest.[38]

97. The Interim Order grants replacement liens of the same nature, extent, and validity as existed on the Petition Date, and provides that nothing in it entitles any creditor to improve its position from its position on the Petition Date.[39]

98. The Interim Order reserves the Debtors' and the estate's right to recover adequate-protection payments that cumulatively exceed the actual petition-date value of the recipient's secured interest.[40]

99. Because BlueRock's asserted interest in IP's assets is unsecured by value, every dollar paid on its account is recoverable.

---

[37] Second Interim Order Authorizing Interim Use of Cash Collateral and Payment of Adequate Protection, Doc. 243 (July 1, 2026), as extended by the Third Interim Order Authorizing Interim Use of Cash Collateral and Payment of Adequate Protection, Doc. 294 (Aug. 5, 2026).
[38] Doc. 243 at 6, 15-16.
[39] Doc. 243 at 9-11, 13.
[40] Doc. 243 at 14.

## V. CLAIMS FOR RELIEF

### Claim 1 — Quiet Title

100. IP realleges the preceding paragraphs.

101. IP owns the accounts receivable generated by its operations, which are property of the estate under 11 U.S.C. § 541.

102. BlueRock claims to have purchased those receivables under the Agreement.

103. The Agreement is a loan, not a sale.

104. Title to IP's receivables never passed to BlueRock.

105. An actual controversy exists concerning ownership.

106. IP is entitled to and prays for judgment quieting title to its receivables against BlueRock's claims.

### Claim 2 — Declaratory Judgment (Recharacterization)

### (28 U.S.C. § 2201; Fed. R. Bankr. P. 7001(i))

107. IP realleges the preceding paragraphs.

108. A true purchase of receivables would require BlueRock to assume a real risk that IP's receipts would decline.

109. In this case, the Agreement provides in both form and substance an absolute right to repayment.

110. The Agreement provides a fixed weekly remittance of $67,500 that retires the $1,350,000 Purchased Amount in exactly twenty weeks.

111. The Agreement does not provide for a purchase of specific receivables, but rather a periodic percentage of all receivables, and then provides that payment of the purchased amount is to be made over a finite, calculable term. In other words, the "purchase" did not actually result in possession by the "buyer" of any actual receivable, but only the right to deduct a fixed weekly amount from the merchant's account.

112. The default, guaranty, and security provisions in the Agreement give BlueRock full recourse.

113. The effective annualized cost of the advance under the Agreement is approximately 91 percent.

114. Based on the foregoing, IP seeks declaratory relief in support of Claim 1 determining that the Agreement constitutes a loan and not a purchase of receivables.

115. An actual controversy exists.

116. IP is entitled to and prays for a declaration under 28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001(i) that the Agreement is a loan and not a sale, that any interest of BlueRock in IP's receivables (if any) is a security interest and not ownership, and that title to the receivables remains in IP's estate.

**Claim 3 — Declaratory Judgment That No Receivable Subject to the Agreement Existed on the Petition Date**

**(28 U.S.C. § 2201; 11 U.S.C. § 552(a); Fed. R. Bankr. P. 7001(i))**

117. IP realleges the preceding paragraphs.

118. In the alternative, to the extent that any receivables generated by IP were "purchased" by BlueRock, all of the receivables as they existed on the Petition Date were

previously purchased by other MCA's to the extent that the same are deemed to have been purchases.

119. There were no receivables owned by IP on the Petition Date subject to the Agreement.

120. BlueRock held and holds no interest in any receivables generated by IP prior to the Petition Date.

121. The receivables IP generates are earned by IP's own performance and do not exist until that performance occurs; the Agreement therefore purported to sell rights to payment that did not exist when it was signed. To the extent the Agreement is a loan, 11 U.S.C. § 552(a) limits any security interest of BlueRock to collateral existing on the Petition Date, and not to the replacement liens granted by the Interim Order, which arise from an order of this Court under 11 U.S.C. § 361(2).

122. BlueRock as a buyer holds no claim as a creditor against IP.

123. IP prays for judgment against BlueRock determining that BlueRock holds no claim against IP or its Chapter 11 estate.

124. This Claim is pleaded in the alternative to Claim 2.

**Claim 4 — Failure of Contract**

125. IP realleges the preceding paragraphs.

126. BlueRock advanced the purchase price under the Agreement to HI.

127. IP is not the Merchant named on the Agreement, and no consideration for the receivables BlueRock claims to have purchased moved from BlueRock to IP.

128. A purported sale of IP's receivables without payment to IP fails for want of consideration.

129. No enforceable purchase of IP's receivables was formed, and any purported obligation of IP under the Agreement is unenforceable.

130. Whatever funds reached IP came from Hubbard Ingredients, LLC in its own right, on its own initiative, and under no obligation to BlueRock.

131. IP prays for judgment against BlueRock determining that no enforceable contract exists between BlueRock and IP, compelling repayment of all funds paid to BlueRock as adequate protection from and after the entry of the Interim Order, and disallowing any claim of BlueRock herein.

**Claim 5 — Avoidance of Unperfected Lien**

**(11 U.S.C. §§ 544(a), 551)**

132. IP realleges the preceding paragraphs.

133. Even a true buyer of accounts must perfect by filing.[41]

134. Perfection is governed by the law of the debtor's location, which for a registered organization is its state of organization.[42]

135. IP is organized in Wyoming.

136. BlueRock filed no financing statement naming IP in Wyoming.

137. BlueRock's only financing statement under the Agreement was filed in Missouri.

138. The financing statement filed by BlueRock in Missouri does not name IP as a debtor.

139. No automatic-perfection exception applies.

[41] U.C.C. §§ 1-201(b)(35), 9-109(a)(3), 9-310(a).
[42] U.C.C. §§ 9-301(1), 9-307(e).

140. U.C.C. § 9-309(2) perfects only an assignment that does not transfer a significant part of the assignor's outstanding accounts. The Agreement purports to reach the Purchased Percentage of all of the merchant's future receipts, without limitation as to account debtor or time period, so § 9-309(2) does not apply. In the alternative, to the extent the Agreement is construed to have assigned accounts outstanding as of its date, it transferred a significant part of IP's outstanding accounts and § 9-309(2) does not apply for that reason as well.

141. The receivables are accounts, rights to payment for goods sold, which the definition of a payment intangible excludes, so U.C.C. § 9-309(3) does not apply. Section 9-309(3) perfects only a sale in any event, and recharacterization as a loan independently defeats it.

142. Nor does U.C.C. § 9-310 protect BlueRock's failure to perfect; it is the rule that a financing statement must be filed.

143. BlueRock's interest in IP's receivables, if any, is therefore unperfected, and IP, as debtor in possession with the rights of a hypothetical judicial lien creditor under § 544(a), may avoid it. The avoided interest is preserved for the estate under § 551.

144. IP prays for judgment against BlueRock avoiding any purported security interest held by BlueRock in and to any assets of IP or its estate.

**Claim 6 — Determination of Secured Status**

**(11 U.S.C. § 506(a))**

145. IP realleges the preceding paragraphs.

146. Pursuant to 11 U.S.C. § 506(a)(1), a secured claim may only be allowed to the extent of the value of the claimholder's interest in the assets of the estate.

147. A claim secured only by collateral whose value is consumed in full by senior liens is not an allowed secured claim under § 506(a).

148. IP's assets, including its receivables, are subject to senior perfected secured claims of $32,405,514.34. IP's receivables had a net value of $8,302,020.73 on the Petition Date.

149. To the extent that BlueRock holds a lien, its lien is not attached to any value in the assets of the estate.

150. To the extent BlueRock holds any allowed claim, it is wholly unsecured under § 506(a), and is allowable, if at all, only as a general unsecured claim.

151. IP prays for judgment determining under 11 U.S.C. § 506(a) that BlueRock holds no secured claim against IP or its estate, and that any allowed claim of BlueRock is a general unsecured claim.

**Claim 7 — Avoidance of Constructively Fraudulent Obligations**

**(11 U.S.C. § 548(a)(1)(B))**

152. IP realleges the preceding paragraphs.

153. This Claim is stated in the alternative to the facts set forth above that IP did not incur any obligations to BlueRock of any nature.

154. Within two years before the Petition Date, IP incurred the obligations to BlueRock described above.

155. By the Agreement and the Addendum, IP incurred an obligation to deliver $1,350,000 while BlueRock advanced the purchase price to HI and nothing to IP.

156. IP received less than reasonably equivalent value in exchange for its obligations under the Agreement.

157. IP was not enriched by the Agreement.

158. IP was insolvent on the date of the Agreement, or became insolvent as a result, in that its liabilities exceeded the value of its assets and it was not able to pay its obligations as they came due.

159. On the Petition Date IP's liabilities exceeded $121,251,240.98 and the value of all of its property was $36,698,025.67.[43]

160. IP was insolvent on April 23, 2026, when it incurred the obligations under the Agreement, in that thirteen days later its liabilities of more than $121,251,240.98 exceeded the value of all of its property, which was less than $40,000,000.00.

161. Excluding intercompany accounts, IP's liabilities exceeded the value of its assets at all times from and after the date of the Agreement.[44]

162. IP was also unable to pay its bills as they came due at all times from and after the date of the Agreement.[45]

163. IP prays for judgment avoiding the obligations incurred by IP under the Agreement (if any), and disallowing any claim of BlueRock against IP and its estate.

**Claim 8 — Avoidance Under the Kansas Uniform Fraudulent Transfer Act**

**(11 U.S.C. § 544(b); K.S.A. 33-204(a)(2), 33-205(a))**

164. IP realleges the preceding paragraphs.

---

[43] Doc. 150 at 128.
[44] Doc. 150 at 128; *see* Doc. 150 at 13-14 (the $8,499,614.14 of accounts receivable IP scheduled excludes the intercompany balances reflected in IP's aging, which totals $32,884,680.95 and shows HI at $23,587,587.08). The $8,499,614.14 figure is IP's alone. Exhibit E states IP's net accounts receivable on the Petition Date as $8,302,020.73, a difference of $197,593.41, after related-party balances and receivables identified as doubtful of collection are removed; the $8,379,424.99 alleged above is that figure together with HFO's $77,404.26.
[45] Doc. 150 at 128 (priority and nonpriority unsecured claims of $89,119,232.07 outstanding on the Petition Date); Doc. 31 at 5; Claim No. 47-1, Attachment 1 (invoices issued to IP in March 2025 remained unpaid on the Petition Date).

165. This Claim is stated in the alternative to the facts set forth above that IP did not incur any obligations to BlueRock of any nature.

166. At least one creditor of IP holding an allowable unsecured claim existed on the Petition Date who could avoid the obligations under the Kansas Uniform Fraudulent Transfer Act, K.S.A. 33-201 et seq., as reflected in IP's Schedule F on file herein and the claims that have been filed in IP's chapter 11 case.

167. More than $10,000,000 of the aforementioned claims arose before the obligations under the Agreement were incurred.

168. IP's accounts receivable were assets within the meaning of K.S.A. 33-201(b), and the obligations IP incurred under the Agreement are obligations within the meaning of K.S.A. 33-204(a) and 33-205(a).

169. Under K.S.A. 33-204(a)(2), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor either was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due.

170. IP incurred each obligation under the Agreement without receiving a reasonably equivalent value in exchange within the meaning of K.S.A. 33-203(a).

171. At the time of the Agreement, IP was engaged in a business for which its remaining assets were unreasonably small in relation to that business, satisfying K.S.A. 33-204(a)(2)(A).

172. IP's obligations under the twelve merchant cash advance agreements as to which suit is being contemporaneously filed required remittances of not less than $600,000.00 in the aggregate each week.[46]

173. At the time of the Agreement, IP intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, satisfying K.S.A. 33-204(a)(2)(B).

174. Under K.S.A. 33-205(a), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

175. IP was insolvent at the time it incurred the obligations under the Agreement, or became insolvent as a result, within the meaning of K.S.A. 33-202(a), in that on the Petition Date its debts of $121,251,240.98 exceeded all of its assets at a fair valuation of $36,698,025.67 and it was generally not paying its debts as they became due.[47]

176. IP, as debtor in possession, may avoid the obligations under 11 U.S.C. § 544(b) to the same extent as the triggering creditor could under the Kansas Uniform Fraudulent Transfer Act.

177. IP prays for judgment avoiding the obligations incurred by IP under the Agreement (if any) under 11 U.S.C. § 544(b) and K.S.A. 33-204(a)(2) and 33-205(a).

---

[46] The twelve contractual weekly remittances total $607,020.25: BlueRock $67,500.00, Breeze $18,666.67, Core $45,300.00, EN OD $93,041.66, Harper $67,500.00, Kingdom $25,000.00, Litefund $24,166.67, Merk $45,000.00, NewCo $75,000.00, Novus $45,666.67, Palisades $22,500.00, and Spring $77,678.58.

[47] Doc. 150 at 128.

**Claim 9 — Objection to and Disallowance of Any Claim of BlueRock**

**(11 U.S.C. §§ 502(b)(9), 1111(a); Fed. R. Bankr. P. 3002(a), 3003(c)(2), (c)(3))**

178. IP realleges the preceding paragraphs.

179. The Court fixed the last day for filing proofs of claim and proofs of interest in these jointly administered cases, and later extended that date to August 15, 2026.

180. The bar date applied to all creditors and parties in interest, including any creditor asserting a claim secured by a lien, security interest, or encumbrance.

181. A creditor must file a proof of claim for its claim to be allowed.

182. IP scheduled BlueRock's claim as disputed. A claim scheduled as disputed is not deemed filed, and BlueRock was therefore required to file a proof of claim for its claim to be treated as a claim in this case.

183. BlueRock filed no proof of claim in IP's case on or before August 15, 2026, and has filed none since.

184. A creditor that fails to file a proof of claim within the time fixed shall not be treated as a creditor with respect to that claim for the purposes of voting and distribution, and a claim for which proof is not timely filed is disallowed.

185. IP objects to any claim of BlueRock against IP or its Chapter 11 estate and prays for judgment disallowing it in its entirety as untimely.

**Claim 10 — Termination, Avoidance, and Recovery of Post-Petition Transfers**

**(11 U.S.C. §§ 549, 550(a))**

186. IP realleges the preceding paragraphs.

187. Following the Petition Date BlueRock received and is scheduled to receive payments on account of the Agreement in accordance with the Interim Order (the "Payments").

188. IP received no value in exchange for the Payments.

189. The Payments are recoverable under the terms of the Interim Order, and if not recoverable under those terms, they were not authorized in the first instance.

190. The transfers are avoidable under 11 U.S.C. § 549 or under the terms of the Interim Order.

191. Upon information and belief, BlueRock did not take the Payments or right to Payments for value, in good faith, and without knowledge of the voidability of the transfers.

192. IP may recover the avoided transfers from BlueRock under the terms of the Interim Order or under 11 U.S.C. § 550(a)(1).

193. IP prays for judgment terminating all future Payments, avoiding all Payments from IP to BlueRock from and after the Petition Date as described above, and recovering their value from BlueRock.

**PRAYER FOR RELIEF**

WHEREFORE, IP respectfully requests that the Court enter judgment against BlueRock:

A. Declaring that the Agreement is a loan and not a sale, and quieting title to IP's accounts receivable in its estate;

B. Avoiding BlueRock's unperfected security interest under 11 U.S.C. § 544(a) and preserving it for the estate under § 551;

C. Determining under 11 U.S.C. § 506(a) that BlueRock holds no secured claim and that any allowed claim of BlueRock is a general unsecured claim;

D. Determining that BlueRock gave no consideration to IP and holds no claim against IP and no valid ownership or security interest in IP's receivables;

E. Avoiding the obligations incurred by IP under the Agreement (if any) under 11 U.S.C. § 548 and K.S.A. 33-204(a)(2) and 33-205(a);

F. Disallowing any claim of BlueRock against IP or its estate in its entirety as untimely, no proof of claim having been filed on or before the August 15, 2026 bar date;

G. Terminating all adequate-protection payments made or to be made by IP on account of BlueRock's asserted interest, avoiding the transfers described in Claim 10, awarding recovery of their value from BlueRock, and directing repayment from BlueRock to IP of the adequate-protection amounts already paid, per the Interim Order;

H. Granting preliminary and permanent injunctive relief under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7001(g) restraining BlueRock, and anyone acting in concert with it, from demanding, collecting, applying, or otherwise exerting control over any receivables generated by IP pending final judgment and thereafter;

I. Awarding costs; and

J. Granting such other relief as is just.

## STATEMENT REGARDING TRIAL

The parties to the Agreement waived trial by jury.[48] BlueRock has not filed a proof of claim in IP's case. The claims against BlueRock are core and are equitable or otherwise triable to the Court. To the extent any jury right exists and has not been waived, IP does not consent to a jury trial before the Bankruptcy Court under 28 U.S.C. § 157(e).

Respectfully Submitted:


PRELLE ERON & BAILEY, P.A.
*/s/ Michael J. Fowler*
DAVID PRELLE ERON, #23429
JANUARY M. BAILEY, #23926
MICHAEL J. FOWLER, #26394
301 N. Main Street, Suite 2000
Wichita, KS 67202
316-262-5500 / 316-262-5559 (fax)
david@eronlaw.net
january@eronlaw.net
michael@eronlaw.net
***Attorneys for IP Debtors***


[48] Ex. A ¶ 4.10.